# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**SHIRLEY JENKINS, as Personal
Representative for the Estate of Jovon
Frazier, deceased,**

     **Plaintiff,**

**v.**                                **Case No.  8:13-cv-2796-T-30TGW**

**MANATEE COUNTY SHERIFF;
CORIZON HEALTH, INC.; KAREN
WORTHINGTON,**

     **Defendants.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Corizon Health, Inc.'s Motion to Dismiss (Dkt. 21), Defendant Manatee County Sheriff's Motion to Dismiss (Dkt. 22), and Plaintiff's Responses in Opposition (Dkts. 27 & 28).  The Court, having reviewed the motions, responses, and being otherwise advised in the premises, concludes that Defendant Corizon's motion is denied and Defendant Manatee County Sheriff's motion is granted in part and denied in part.

## BACKGROUND

This case arises from the death of Jovon Frazier while he was an inmate in the Manatee County Jail and in the custody of Defendant Manatee County Sheriff.  The amended complaint alleges that, while confined in the Manatee County Jail, Frazier received

deliberately indifferent medical care that resulted in the amputation of his left arm on February 2, 2010, and Frazier's death on September 18, 2011.  During the relevant time that Frazier was an inmate, Defendant Manatee County Sheriff had a duty to provide adequate medical care to all pretrial detainees and inmates within the Manatee County jail system. The Sheriff contracted with Defendant Corizon Health, Inc. to provide medical care within the Manatee County jail system.  As such, Corizon acted as an agent of the Sheriff.

On February 18, 2009, Frazier became an inmate at the Manatee County Jail.  About that time, Corizon screened Frazier and noted that, except for a history of chicken pox and asthma, Frazier's health was unremarkable.  On July 22, 2009, Frazier submitted the first of numerous inmate medical request forms for medical care to his left shoulder/arm.  The first request form documented Frazier's complaints of "sharp pains" in his "left shoulder" that radiated "down to [his] elbow".  Dkt. 20 at ¶13.  Frazier was seen by an unidentifiable employee/agent of Corizon, but he was not referred to a physician or physician's assistant for a physical examination.  Defendant nurse Karen Worthington classified Frazier's need for care as routine and gave him Tylenol.

On August 3, 2009, August 26, 2009, August 28, 2009, September 4, 2009, and September 7 or 8, 2009, Frazier submitted inmate medical request forms that requested medical care for his left shoulder/arm.  Although nurse Worthington and other unidentifiable Corizon employees met with Frazier in response to his requests and recorded his complaints and vital signs, Frazier was never referred to a physician.

On September 9, 2009, nurse Worthington met with Frazier and recorded his complaints and vital signs. Nurse Worthington documented Frazier's condition as "routine" and indicated that she placed Frazier on the "MD's list". *Id.* at ¶19.

On September 17, 2009, an x-ray was performed on Frazier's left shoulder. The stated reason for the x-ray was "r/o fx", i.e., rule out fracture. The impression was "negative, normal study". *Id.* at ¶20.

On September 22 or 23, 2009, Frazier submitted his seventh inmate medical request form for medical care to his left shoulder/arm. Frazier was seen by an unidentifiable Corizon employee but not referred to a physician.

On September 28, 2009, Frazier submitted his eighth inmate medical request form. The form stated in part: "I need to see a doctor! I've been having sharp pain in my Left shoulder and I didn't need pills. I done put a lot of sick calls in, and ya'll keep sending me back and ain't tell me nothing. I need a doctor!" *Id.* at ¶23. Frazier was not referred to a physician or physician's assistant. Rather, he was again seen by an unidentifiable Corizon employee.

On September 30, 2009, nurse Worthington met with Frazier, recorded his complaints, took his vital signs, and made an indication about "medication" and "exercise for shoulder". *Id.* at ¶24.

On October 2, 2009, October 10, 2009, October 13, 2009, October 18, 2009, and October 23, 2009, Frazier submitted his ninth, tenth, eleventh, twelfth, and thirteenth inmate medical request forms for medical care to his left shoulder/arm. He met with nurse

Worthington and unidentifiable Corizon employees during those times, but he was not seen by a physician or physician's assistant.

On October 29, 2009, an x-ray of Frazier's left shoulder/arm was performed at the Manatee County Jail.  The stated reason for the x-ray was "left shoulder pain".  The stated finding was "inferior subluxation of humeral head usually secondary to fluid and tendon injury".  An MRI was recommended for full evaluation.  *Id.* at ¶33.

That same day, Frazier was transported to Manatee Memorial Hospital.  Another x-ray of his left shoulder was performed.  The attending physician observed "I am concern [sic] there is some sclerosis of the proximal humerus and possibly even a soft tissue mass.  This raises the possibility of tumor and infection.  Patient is to undergo further evaluation with a postgadolinium MRI.  There may be some subtle periosteal elevation which could also be seen with tumor of [sic] infection."  *Id.* at ¶35.

Subsequently, Frazier received an MRI at Manatee Memorial Hospital.  The MRI indicated that Frazier's left shoulder had a "[l]arge mass involving the proximal left arm most likely osteosarcoma".  Frazier was admitted as an inpatient to rule out a septic joint of his left shoulder.  *Id.* at ¶36.

On October 31, 2009, after receiving medication and undergoing laboratory tests, Frazier was discharged from Manatee Memorial Hospital to the Manatee County Jail's infirmary location.  Frazier's patient information and records were provided to an employee/agent of Corizon and on November 3, 2009, the records were reviewed by Jaime F. Rubio, M.D., Site Medical Director of the Manatee County Jail.

Subsequently, Frazier was treated at Moffitt Cancer and Research Center and received a detailed course of treatment, including, among other things, chemotherapy, medication, diagnostic studies, laboratory studies, and surgery.  Notwithstanding this treatment, the osteosarcoma progressed.

On February 2, 2010, Frazier's left upper extremity was amputated at Moffitt.

On or about June 1, 2011, Frazier was diagnosed with lung metastasis and malignant pleural effusion.

On September 15, 2011, Howard R. Abel M.D. wrote a letter to Plaintiff's counsel in this case regarding the adequacy of Corizon's medical care.  Able opined, in relevant part, that the medical care withheld from Frazier while he was in the Sheriff's custody constituted "gross negligence and a reckless disregard to Mr. Frazier' [sic] right to timely and professionally appropriate medical care."  Able concluded that "the failure to provide timely and appropriate medical care to Mr. Frazier compromised his likelihood of surviving from his malignant disease".  *Id.* at ¶50.

On September 18, 2011, Frazier died as a result of the osteosarcoma.

On September 16, 2013, Plaintiff Shirley Jenkins, as the Personal Representative of Frazier's estate, filed the instant action in state court.  Corizon, with the Sheriff's consent, removed the action to this Court.  The amended complaint includes section 1983 claims

against Corizon and the Sheriff (Counts I and II respectively).[1]   Both claims relate to the deliberately indifferent medical care Frazier received while in the Sheriff's custody.

With respect to Corizon, Plaintiff alleges that Corizon was aware of Frazier's serious medical condition, failed to provide Frazier with adequate medical care, made no attempt to discover the cause of Frazier's chronic and consistent complaints, and undertook no steps to have Frazier's condition diagnosed, cared for, or treated in any meaningful way until it was too late to avoid amputation of his left arm and his subsequent death due to osteosarcoma.

Plaintiff contends that, in order to save money, it was Corizon's widespread custom, policy, and practice to discourage its nursing staff from referring inmates with complaints of serious medical conditions to outside medical practitioners or facilities for examination and/or treatment, or from even referring said inmates to Corizon's own physicians and physician's assistants.  As a result, Frazier was denied access to adequate medical personnel capable of evaluating his need for medical care and treatment.

Plaintiff also alleges that it was Corizon's widespread custom, policy, and practice to discourage its medical personnel from requesting diagnostic procedures and studies, such as an MRI, to assist in diagnosis of an inmate's serious medical condition.

Corizon implemented these widespread customs, policies, and practices for financial reasons and in deliberate indifference to the serious medical needs of Frazier and other

---

[1] There is also a section 1983 claim against nurse Worthington (Count III), who has not yet appeared in this action.

inmates incarcerated at Manatee County jail.  As a result, Frazier's left upper extremity was amputated and Frazier ultimately died.

Plaintiff's claim against the Sheriff mimics the allegations against Corizon.

Defendants Corizon and the Sheriff now move to dismiss the section 1983 claims. Both Defendants argue that the allegations are insufficient to establish a constitutional claim of deliberate indifference to medical care.  They also contend that the statute of limitations bars portions of Plaintiff's allegations.

## STANDARD OF REVIEW FOR A RULE 12(b)(6) MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted.  When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).   However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  On the contrary, legal conclusions "must be supported by factual allegations." *Id.*   Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

## I.   Claims for Deliberate Indifference to Medical Needs

"'[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain,' which is prohibited by the Eighth Amendment." *Harris v. Leder*, 519 Fed. Appx. 590, 595 (11th Cir. May 24, 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)).   Not every claim of inadequate medical attention rises to the level of a constitutional violation.   To show that a prison official acted with deliberate indifference to serious medical needs, a prisoner must establish three elements.   First, he must satisfy the objective component by showing that he had a serious medical need.   Second, he must satisfy the subjective component by showing that a prison official acted with deliberate indifference.   Third, as with any tort claim, the prisoner must show that the injury was caused by the defendant's wrongful conduct.   *See Goebert v. Lee County,* 510 F.3d 1312 (11th Cir. 2007).

To establish the subjective component, a prisoner must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence.   *See Bozeman v. Orum,* 422 F.3d 1265, 1272 (11th Cir. 2005); *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999).   A delay in providing medical treatment can sustain a "deliberate indifference" claim, where the delay has exacerbated the prisoner's injury or unnecessarily prolonged the inmate's pain.   *See Harper v Lawrence County, Ala.,* 592 F.3d 1227, 1235 (11th Cir. 2010).   In this type of case, the nature of the medical need, the reason

for the delay, and the effect of the delay on the prisoner's medical condition are all relevant factors in determining whether the delay has reached constitutionally intolerable proportions. *See Goebert,* 510 F.3d at 1327.

## II.       Municipal Liability under Section 1983

Any plaintiff bringing a section 1983 claim against a municipality based on the acts of one of its employees/agents must prove two things.  First, plaintiff must sufficiently allege a constitutional violation.  *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). Second, the "plaintiff suing a municipality under § 1983 must show that the municipality itself injured the plaintiff by having in place a policy or custom which violated the plaintiff's rights."  *Buckner v. Toro,* 116 F.3d 450, 451 (11th Cir. 1997) (citing *Monell v. Dept. of Social Servs. of New York,* 436 U.S. 658 (1978)).  Under *Monell,* the municipal "policy" or "custom" must be the moving force behind the constitutional violation and "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable city 'policy.'"  *City of Canton, Ohio v. Harris,* 489 U.S. 378, 379 (1989).

Here, the Sheriff is clearly considered a municipality.  Although Corizon is a private entity, it too is considered a municipality for purposes of section 1983 liability because the Sheriff contracted with it to provide medical care within the Manatee County jail system. In other words, Corizon performed traditional public functions.  *See Fields v. Corizon Health, Inc.*, 490 Fed. Appx. 174, 181-82 (11th Cir. Sep. 6, 2012) (noting that: "Although Prison Health is not a governmental entity, '[w]here a function which is traditionally the

exclusive prerogative of the state (or here, county) is performed by a private entity,' that private entity, like a municipality, may be held liable under § 1983") (quoting *Ancata v. Prison Health Servs.,* 769 F.2d 700, 703 (11th Cir. 1985)).

### III.   Corizon's Motion to Dismiss the Section 1983 Claim

A.   Corizon's Argument that Plaintiff Fails to Allege a Constitutional Violation

Corizon argues that the amended complaint fails to assert sufficient facts to establish "deliberate indifference", i.e., the subjective component of the claim.  It contends that the allegations amount to nothing more than medical negligence, which is insufficient to establish the higher burden of conduct that is more than gross negligence.  At this stage, the Court disagrees.

Plaintiff alleges numerous facts detailing a course of conduct on Corizon's part of ignoring Frazier's frequent and consistent medical complaints regarding pain to his left shoulder.  The amended complaint details Frazier's complaints and Corizon's employees' repeated failure to refer Frazier to a physician.  The amended complaint discusses the ramifications of Corizon's delay in adequately treating Frazier, i.e., the amputation of Frazier's left arm and his subsequent death due to osteosarcoma.  Simply put, at this stage, the allegations as detailed above are sufficient to establish a constitutional violation.

B.   Corizon's Argument that Plaintiff Fails to Allege a Policy or Custom that Violated Frazier's Rights

Corizon also argues that Plaintiff fails to adequately allege a policy or custom that violated Frazier's rights.  The Court disagrees.  As stated above, Plaintiff alleges that it was

Corizon's widespread custom, policy, and practice to save money by discouraging its staff from referring inmates with complaints of serious medical conditions to its physicians and outside medical practioners or facilities for examination and/or treatment.  Plaintiff also alleges that this custom, policy, and practice included discouraging Corizon's staff from requesting expensive diagnostic tests and procedures.  This custom, policy, and practice was the moving force behind the constitutional violation, i.e., it prevented Frazier from receiving adequate medical care and was in deliberate indifference to Frazier's constitutional right to said care.  These allegations are sufficient at this stage.  Accordingly, Corizon's motion to dismiss is denied.

**IV.**     **The Sheriff's Motion to Dismiss the Section 1983 Claim**

   A.     <u>The Sheriff's Argument that Plaintiff Fails to Allege a Constitutional Violation</u>

   Like Corizon, the Sheriff argues that Plaintiff's allegations do not establish a constitutional violation.  The Court disagrees for the same reasons already discussed.  *See* Section II. A.

   B.     <u>The Sheriff's Argument that Plaintiff Fails to Allege a Policy or Custom that Violated Frazier's Rights</u>

   The Sheriff also argues that Plaintiff fails to allege a policy or custom that violated Frazier's constitutional right to receive adequate medical care and treatment.  The Court agrees.  Although Plaintiff adequately alleges a policy, custom, or practice on the part of Corizon, Plaintiff alleges no facts to establish that the Sheriff had a similar practice of providing deliberately indifferent medical care to its inmates.  Plaintiff does not even allege

knowledge on the Sheriff's part of Corizon's policy, custom, or practice to save money by providing grossly deficient medical care.  Plaintiff appears to impute knowledge of Corizon's policy on the Sheriff solely based on the Sheriff's contract with Corizon to provide medical care within the Manatee County Jail system.  But, as set forth above, an allegation of vicarious liability, or respondeat superior, is insufficient on its own to establish liability on the Sheriff's part.  Accordingly, the Sheriff's motion to dismiss is granted.

## V.    Corizon and the Sheriff's Argument that the Statute of Limitations Bars All Claims Arising Prior to September 16, 2009

"[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred."  *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004) (citation and internal quotation marks omitted).  "Florida's four-year statute of limitations applies to ... claims of deprivation of rights under 42 U.S.C. § [ ] 1983 ..."  *Chappell v. Rich,* 340 F.3d 1279, 1283 (11th Cir. 2003).  The statute of limitations begins to run on a section 1983 claim when "the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury."  *Id.*

Corizon and the Sheriff do not dispute that the original complaint, filed in state court on September 16, 2013, was timely filed.  Rather, they contend that any allegations that relate to the period of time prior to September 16, 2009, are barred because they are outside the four-year limitations period.  The Court cannot rule on this issue at this stage.  Indeed, it is clear from the face of the complaint that it was timely filed.  And the Court cannot determine

on a motion to dismiss the issue of whether the allegations regarding Frazier's complaints prior to September 16, 2009, relate to separate and discrete incidents of Defendants' constitutional violations or are merely background facts describing the constitutional violation that culminated in Frazier's death.  Accordingly, the motions to dismiss are denied with respect to this issue.

It is therefore **ORDERED AND ADJUDGED** that:

1.    Defendant Corizon Health, Inc.'s Motion to Dismiss (Dkt. 21) is denied. Corizon shall file an answer to the amended complaint within fourteen (14) days of this Order.

2.    Defendant Manatee County Sheriff's Motion to Dismiss (Dkt. 22) is granted in part and denied in part.  The motion is granted to the extent that the section 1983 claim against the Sheriff is dismissed.  The motion is denied to the extent that it argued partial dismissal based on the expiration of the statute of limitations.  The Clerk of Court is directed to terminate the Sheriff as a party.

3.    Defendant Corizon Health, Inc.'s Motion for Leave to File a Reply (Dkt. 29) is denied as moot.

**DONE** and **ORDERED** in Tampa, Florida on January 10, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>**Copies furnished to:**</u>
Counsel/Parties of Record

S:\Even\2013\13-cv-2796.mtstodismiss.frm